■ In the Matter of PEARL LEATHER FINISHERS, INC., Petitioner, v GLOVERSVILLE-JOHNSTOWN JOINT SEWER BOARD, Respondent.—Casey, J. P. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Fulton County) to review a determination of respondent which conditionally revoked petitioner's industrial wastewater discharge permit.

Petitioner, a leather finishing and painting business located in the City of Johnstown, Fulton County, discharges its industrial waste into respondent's wastewater treatment facility. Pursuant to General Municipal Law § 451 the City of Johns-

town enacted a sewer use law, which authorizes respondent to issue discharge permits and to assess users of the facility "charges based on the cost to treat and handle the flow and pollutant loading of their wastewater and the cost associated with the plant capacity for their discharge". To this end, respondent charges industrial users annually according to their classification and based upon the amount of water they use and the amount of pollutants in their wastewater as determined by respondent's personnel.

Petitioner is classified as a class B major contributing industry. The discharge from a major contributing industry (hereinafter MCI) is measured for the total organic and ammonia nitrogen, for suspended solids and for biochemical oxygen demand. Class A MCI users have installed automatic monitoring stations which comply with the sewer law's requirements to inspect, sample and measure the flow of a user's wastewater. Class B MCI users, such as petitioner, have not installed an automatic monitoring station, and sampling is done by respondent's personnel by means of a portable unit, which draws in a sample of wastewater at fixed intervals over a period of time. The sampling of petitioner's wastewater is done at a manhole located outside of petitioner's plant where all of its wastewater flows through a discharge pipe. Samples are taken between one and four times a month, every 15 minutes for a 24-hour period.

In October 1984 petitioner's sewer bill reflected a substantial increase in the total solids contained in its discharge, and petitioner challenged the accuracy of the bill, claiming that its process had not changed. In January 1988 respondent issued a "notice of violation" to petitioner informing it that sewer use charges in the amount of $8,976.20 were owed for the period August 1986 to November 1987. Hearings were held on petitioner's claim that respondent's measuring methods were inaccurate and improper, resulting in false and inaccurate readings. Respondent determined that petitioner owed $8,388.05 for the period in question and ordered payment within 14 days or petitioner's discharge permit would be revoked. This CPLR article 78 proceeding by petitioner ensued.

General Municipal Law § 451 (1) provides that sewer rents can be based upon any one of four specific factors or upon any other equitable basis determined by the local legislative body, including but not limited to any combination of the four specified factors. Respondent bases its water rents upon a combination of water consumption and character and content

of the industrial waste, and petitioner claims that this basis is inequitable because of inaccuracies inherent in the use of water consumption as a factor and inaccuracies in the sampling methods used by respondent's personnel. Petitioner claims that reliance upon water consumption is inaccurate because petitioner's process uses up a substantial amount of the water that flows into its plant which is, therefore, not discharged as wastewater to respondent's facility. A similar claim could obviously be made by many industrial users, but the Legislature has nevertheless specified water consumption as an allowable basis for determining sewer rents (General Municipal Law § 451 [1] [a]). Respondent determines sewer rents by using water consumption for all of its MCI users, except one which has an unmetered water source. At best, petitioner's argument suggests that there might be a more accurate method for calculating the actual load placed upon respondent's facility by petitioner's wastewater, but there is no evidence in the record that the sewer rents determined by respondent are inequitable.

We reach a similar conclusion as to petitioner's claim of inaccuracies in the sampling methods used by respondent's personnel. Petitioner presented no direct proof that the readings were inaccurate. Rather, petitioner draws an inference of inaccuracy from the disparity in the readings despite a claimed lack of change in the industrial process and from certain claimed improprieties in the sampling technique which, according to petitioner, created the potential for inaccurate readings. There is evidence in the record, however, that suggests the fluctuations in the readings may be due to the nature of petitioner's industry, not the sampling techniques, and there is also evidence that the techniques used by respondent's personnel were not improper. In addition, there is no evidence that the readings resulted in inequitable, unjust or unreasonable sewer rents. Based upon our review of the record as a whole, we conclude that there is a rational basis for respondent's factual determination and, therefore, it cannot be disturbed (see, Matter of Pell v Board of Educ., 34 NY2d 222).

Turning to the enforcement portion of respondent's determination, we agree with petitioner that respondent lacked the authority to revoke petitioner's discharge permit if payment of the sewer rent charges was not made within a specified period of time. Respondent contends that such authority is inherent in the power to issue a discharge permit. It is clear, however, that the proposed revocation of the permit has

nothing to do with the manner in which petitioner discharges its wastewater, or the quantity or condition of that wastewater. Rather, the sole purpose of the conditional revocation is as a collection device, to compel petitioner to pay its overdue sewer rents. General City Law § 20 (26-a) authorizes a city to impose sewer rents, but only in accordance with General Municipal Law article 14-F, and that article contains specific alternatives to be used by the local legislative body in seeking to collect sewer rents (General Municipal Law § 452 [4]). Since respondent's authority in relation to sewer rents is derived exclusively from a statutory scheme which does not authorize the use of permit revocation as a means of collecting sewer rents, respondent's conditional revocation of petitioner's permit must be annulled. Respondent points to General Municipal Law § 452 (5) (d), which authorizes a local legislative body to "provide for penalties for sewer rents in arrears", but the term "penalties" as used in the statute is limited to monetary penalties (see, General Municipal Law § 453 [which refers to "(r)evenues derived from sewer rents, including penalties and interest"]).

Determination modified, without costs, by annulling so much thereof as conditionally revoked petitioner's discharge permit, and, as so modified, confirmed. Casey, J. P., Weiss, Mikoll, Mercure and Harvey, JJ., concur.